


FILED

Apr 17 2025, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

In re: the Adoption of M.D. (Minor Child),

M.S. (Putative Father),

*Appellant-Respondent*

v.

J.A. and C.A. (Adoptive Parents),

*Appellees-Petitioners*

---

April 17, 2025

Court of Appeals Case No.
24A-AD-2302

Appeal from the Hamilton Superior Court

The Honorable David K. Najjar, Judge

Trial Court Cause No.
29D05-2207-AD-1039

---

**Opinion by Judge May**
Judges Weissmann and Scheele concur.

**May, Judge.**

[1] M.S. ("Putative Father")[1] appeals the order by the Hamilton Superior Court (hereinafter "Adoption Court") that granted a petition by J.A. and C.A. ("Adoptive Parents") to adopt M.D. ("Child"). Putative Father raises two issues, which we revise and restate as:

> 1. Whether the Adoption Court erred when it determined Child's paternity had not been established;

> 2. Whether the Adoption Court erred when it determined Putative Father's consent to Child's adoption was not required; and

> 3. Whether the Adoption Court erred when it determined Putative Father's consent was irrevocably implied.

We affirm.

## Facts and Procedural History

[2] Child was born to S.D. ("Mother")[2] on August 30, 2017. Child lived with Mother after his birth. In July 2019, Mother filed a paternity action in a

---

[1] Pursuant to Indiana Code section 31-9-2-100, a "putative father" is a male

who is alleged to be or claims that he may be a child's father but who:

(1) is not presumed to be the child's father under IC 1-14-7-1(1) or IC 31-14-7-1(2); and

(2) has not established paternity of the child:

    (A) in a court proceeding; or

    (B) by executing a paternity affidavit under IC 16-37-2-2.1;

before the filing of an adoption petition.

[2] Mother consented to Child's adoption and does not participate in this appeal.

Marion County Court (hereinafter "Paternity Court") that alleged Putative Father was Child's biological father. In August 2019, Putative Father took a genetic test that indicated he was Child's biological father, and that result was submitted to the Paternity Court.

[3] In October 2019, the Marion County Juvenile Court ("Juvenile Court") determined Child was a Child in Need of Services ("CHINS") based on domestic violence in Mother's home. Putative Father was incarcerated at the time and could not care for Child. The Juvenile Court placed Child with Adoptive Parents in December 2019. On March 31, 2022, in the Juvenile Court, the Department of Child Services ("DCS") filed a petition to terminate Mother's parental rights to Child. At that time, Putative Father remained incarcerated, had not established paternity, and had not registered with the putative father registry ("the Registry").[3]

[4] On July 19, 2022, Adoptive Parents filed a petition to adopt Child in the Adoption Court. Putative Father still remained incarcerated, still had not established paternity, and still had not registered with the Registry. Mother executed consent for Adoptive Parents' adoption of Child on August 8, 2022.

[5] In January 2023, Putative Father was released from incarceration. While he was incarcerated, he had taken no action in the Paternity Case. During those three-and-a-half years, the Paternity Case had been "heard along side the

---

[3] Ind. Code ch. 31-19-5 (creating the Registry within the Department of Health).

CHINS matter on multiple occasions." (Appellees' App. Vol. II at 16.) After Putative Father was released, the Paternity Court held a status hearing on October 17, 2023. Putative Father did not appear.

[6] On December 15, 2023, in the Adoption Court, Adoptive Parents filed a "Motion for Determination that the Consent of [Putative Father] to Adoption is not Required and Irrevocably Implied." (*Id*. at 11) (original formatting omitted). In that motion, Adoptive Parents argued that Putative Father's consent to Child's adoption by Adoptive Parents was irrevocably implied because Putative Father had not registered with the Registry. Adoptive Parents also argued Putative Father's consent was not necessary because he had not established paternity or registered with the Registry prior to Adoptive Parents' filing of the petition to adopt Child. On December 18, 2023, the Adoption Court granted Adoptive Parents' motion, concluding Putative Father's consent was "both irrevocably implied and not required." (Appellant's App. Vol. II at 14.)

[7] On February 5, 2024, the Paternity Court held a final hearing in the Paternity Case and Putative Father attended. On February 13, 2024, the Paternity Court entered its order declaring Putative Father to be Child's father ("Paternity Order"). On March 13, 2024, Adoptive Parents filed a motion to intervene in the Paternity Court and a motion to correct error that argued the Paternity Court lost jurisdiction over the paternity case when they filed their petition to adopt Child and thus the Paternity Court could not enter the Paternity Order. On the same day, Adoptive Parents also filed, in the Adoption Court, a motion

for the Adoption Court to assume jurisdiction over the Paternity Case and consolidate it with the Adoption Case.

[8] On March 18, 2024, in the Paternity Court, Adoptive Parents filed a motion to stay and transfer the Paternity Case. The same day, the Paternity Court granted Adoptive Parents' motion to intervene in the Paternity Case and gave Putative Father fifteen days to respond to Adoptive Parents' motion to correct error. Father did not respond to their motion to correct error. On March 22, 2024, the Paternity Court granted Adoptive Parents' request to stay proceedings in the Paternity Court and transfer the matter to the Adoption Court.

[9] On April 19, 2024, the Adoption Court vacated the Paternity Order after determining it "was entered in error[.]" (Appellant's App. Vol. II at 19.) On August 26, 2024, the Adoption Court granted Adoptive Parents' petition to adopt Child in an order that, in necessary part, provided:

> That on December 15, 2023, [Adoptive Parents] filed with the Court an affidavit prepared by the Indiana Department of Health indicating that no man had registered with the Indiana Putative Father Registry as of August 17, 2022. Said affidavit is on file with this Court and a part of the Court's record.
>
> That the child's paternity has not been established. That [Putative Father] is the biological father of the child. [Putative Father]'s consent to the adoption is irrevocably implied as a matter of law, as confirmed by this Court's December 18, 2023 Order.

(*Id.* at 23.)

## Discussion and Decision

[10] In adoption cases, we apply a "well-settled" standard of review. *In re Adoption of M.B.*, 944 N.E.2d 73, 76 (Ind. Ct. App. 2011). We will not disturb the trial court's ruling "unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." *Id.* (quoting *M.A.S. v. Murray*, 815 N.E.2d 216, 218-19 (Ind. Ct. App. 2004)). We consider only the evidence favorable to the trial court's judgment, and the inferences therefrom, and we may not reweigh evidence. *Id.* We presume the trial court's decision is correct, and the appellant must rebut that presumption. *Id.*

[11] To the extent the parties' arguments raise questions of statutory interpretation, we review those issues de novo. *See Kelley v. State*, 166 N.E.3d 936, 937 (Ind. Ct. App. 2021) (addressing questions of statutory interpretation de novo). "[O]ur goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes." *Metro. Dev. Comm'n. v. Powell*, 162 N.E.3d 1100, 1103 (Ind. Ct. App. 2020). "The rules of statutory interpretation mandate that we assign words their plain and ordinary meaning unless the statute provides definitions otherwise." *Montgomery v. State*, 878 N.E.2d 262, 266 (Ind. Ct. App. 2007). We pay attention to both what the statute says and what it does not say. *ESPN Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016). "[W]e may not add new words to a statute which are not the expressed intent of the legislature." *Ramey v. Ping*, 190 N.E.3d 392, 403 (Ind. Ct. App. 2022), *trans. denied*.

Before addressing Putative Father's arguments, we set out some relevant statutory provisions that create the framework in which our discussion arises. In Indiana Code section 31-19-9-1, our legislature defined those persons or entities from whom consent must be obtained prior to a child's adoption. As relevant to this case, that statute provides:

> Except as otherwise provided in this chapter, a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by the following:
>
> * * * * *
>
> (2) The mother of a child born out of wedlock and the biological father of the child if the father's paternity has been established by:
>
> > (A) a court proceeding other than the adoption proceeding, except as provided in IC 31-14-20-2;[4] or
> >
> > (B) a paternity affidavit executed under IC 16-37-2-2.1;

---

[4] Indiana Code section 31-14-20-1 indicates a man who "is a party to a paternity action under this article **shall register** with the putative father registry under IC 31-19-5 within the period provided under IC 31-19-5-12." Ind. Code § 31-14-20-1(b) (emphasis added). Indiana Code section 31-14-20-2 indicates a man who fails to register with the Registry as required by section 1 waives his right to notice of an adoption petition regarding the child at issue in the paternity action if the adoption is filed before the establishment of paternity and the mother did not disclose his name and address to the adoptive parents' attorney. A putative father's waiver "constitutes the man's irrevocably implied consent to the child's adoption." Ind. Code § 31-14-20-2(b).

> unless the putative father gives implied consent to the adoption under section 15 of this chapter.

Ind. Code § 31-19-9-1(a)(2).

[13] However, the consent required by Section 31-19-9-1 is not required in legislatively defined circumstances, which includes as relevant here:

> (6) The biological father of a child born out of wedlock if the:

>> (A) father's paternity is established after the filing of a petition for adoption in a court proceeding or by executing a paternity affidavit under IC 16-37-2-2.1; and

>> (B) father is required to but does not register with the putative father registry established by IC 31-19-5 within the period required by IC 31-19-5-12.

Ind. Code § 31-19-9-8(a).

## 1. Whether Putative Father's paternity was "established"

[14] Putative Father first alleges his consent for Child's adoption was required under Indiana Code section 31-19-9-1(a)(2) because "he established paternity, or should be regarded as establishing paternity, for the purposes of" that statute. (Appellant's Br. at 6.) In support, Putative Father notes he participated in DNA testing in August 2019 and the results filed with the Paternity Court demonstrated he is the biological father of Child. According to Putative Father, submitting to the DNA test was "all that he could reasonably be expected to do to establish paternity." (*Id*. at 7.) Moreover, he asserts, "any paternity court

delays should not be attributed to him," (*id*.), because "it is unknown what else [Putative Father] could have done to cause the paternity court to issue its decree in a timelier manner when the evidence, at least with respect to paternity, was already before the paternity court." (*Id*.) We disagree.

[15] Putative Father could have filed a motion asking the Paternity Court to hold a hearing on Mother's petition or to enter an order declaring him Child's legal father. *See* Ind. Code § 31-14-3-1 ("The Indiana Rules of Civil Procedure apply to paternity actions."); Ind. Trial Rule 7(B) (providing procedure for requesting an order); 7(C) (providing procedure for requesting hearing). Putative Father could have registered with the Registry. *See* Ind. Code § 31-14-20-1 (man who is party to paternity action "shall register"). Putative Father's assertion that there was no action he could have taken to secure a right to parent Child is not well-taken. A party is not permitted to stand idly by and then argue the trial court was responsible for the consequences of that party's own inaction. *See, e.g.*, *Knight v. State*, 155 N.E.3d 1242, 1251 (Ind. Ct. App. 2020) (refusing to decide merits of legal arguments about trial court's failure to invite allocution statement during probation hearing because probationer failed to object to the alleged error during the probation hearing). If Putative Father wanted the legal right to act as Child's parent, he should have taken steps to secure his rights when he received the DNA results.

[16] Nor do we find any legal support for Putative Father's assertion that a positive DNA result meant he had "established paternity." (Appellant's Br. at 6.) It is true that a DNA result indicating "at least a ninety-nine percent (99%)

probability that the man is the child's biological father" creates a presumption that a man is a child's biological father. Ind. Code § 31-14-7-1(3). However:

> A man's paternity may only be established:
>
> (1) in an action under this article; or
>
> (2) by executing a paternity affidavit in accordance with IC 16-37-2-2.1.

Ind. Code § 31-14-2-1. On February 13, 2024, the Paternity Court entered an order declaring Putative Father to be Child's father ("Paternity Order"), but that order was vacated on April 19, 2024. The record before us does not indicate Putative Father ever filed a paternity affidavit. Accordingly, his paternity has not been "established" for purposes of Article 31-19 of the Indiana Code.[5] *See, e.g.*, Ind. Code § 31-19-9-8(a)(6) (indicating consent of "biological father" is not required for adoption if father did not register as required and paternity was not established before petition for adoption filed).

---

[5] In his reply brief, Putative Father argues we "should look to when the paternity action was filed and any subsequent decree should relate back to that filing date." (Reply Br. at 9.) Adoptive Parents thereafter filed a motion to strike Putative Father's reply brief because it advanced a new legal theory about how we should determine when paternity is established. We agree with Adoptive Parents that Putative Father cannot raise a new issue in his Reply Brief, and we accordingly hold that issue is waived for appellate review. *See Taylor v. St. Vincent Halem Hosp., Inc.*, 180 N.E.3d 278, 290 (Ind. Ct. App. 2021) (waiving novel argument raised in reply brief). As we decline to consider Putative Father's relation-back arguments, we deny Adoptive Parents' motion to strike as moot by separate order issued contemporaneous with this opinion.

## 2. Whether Putative Father's consent was not required

[17] We turn, then, to Indiana Code section 31-19-9-8(a), which defines when a putative father's consent is "not required" for adoption. The relevant statutory provision states consent is not required from:

> (6) The biological father of a child born out of wedlock if the:
>
>> (A) father's paternity is established after the filing of a petition for adoption in a court proceeding or by executing a paternity affidavit under IC 16-37-2-2.1; and
>>
>> (B) father is required to but does not register with the putative father registry established by IC 31-19-5 within the period required by IC 31-19-5-12[.]

Ind. Code § 31-19-9-8(a).

[18] As we held in the prior section that Putative Father's paternity was not "established" for purposes of this statutory scheme by his completion of a DNA test, Putative Father's paternity had not been established by the time Adoptive Parents filed their petition to adopt Child on July 19, 2022. Thus, the first element of Indiana Code section 31-19-9-8(a)(6) is satisfied, *see* Ind. Code § 31-19-9-8(a)(6)(A) (paternity established after filing of adoption petition), and we turn to the second element of the test in Indiana Code section 31-19-9-8 for determining whether a biological father's consent is not required.

[19] The second element asks whether "father is required to but does not register with the putative father registry established by IC 31-19-5 within the period

required by IC 31-19-5-12." Ind. Code § 31-19-9-8(a)(6)(B). Article 31-14 of the Indiana Code sets out the rules for paternity actions and it instructs that a man who "is a party to a paternity action under this article **shall register** with the putative father registry under IC 31-19-5 within the period provided under IC 31-19-5-12." Ind. Code § 31-14-20-1(b) (emphasis added). Thus, Putative Father became obligated to register with the Registry when Mother filed the paternity action against him in July 2019.[6]

[20] The "period required by IC 31-19-5-12" in which Putative Father needed to register was "the earlier of the date of the filing of a petition for the: (A) child's adoption; or (B) termination of the parent-child relationship between the child

---

[6] Putative Father argues he was not required to register with the Registry because Indiana Code section 31-19-5-1(b) indicates the chapter does not apply "if, on or before the date the child's mother executes a consent to the child's adoption, the child's mother discloses the name and address of the putative father to the attorney or agency that is arranging the child's adoption." According to Putative Father, his name and address were known "in 2019, when he submitted to DNA testing before the paternity court." (Appellant's Br. at 8.) Therefore, according to Putative Father, "his identity and pertinent information was known or reasonably available to the attorney or agency arranging the adoption on or before the time the mother gave her written consent to the adoption[.]" (*Id.* at 9.)

Putative Father's argument rests on assumptions that are not supported by any evidence in the record that he has provided to us. While Mother knew Putative Father's name and address in July 2019, the record before us indicates Putative Father thereafter spent some years in prison. The record does not demonstrate where Putative Father was incarcerated or whether he remained at the same facility during all of those years. Nor does the record indicate that Mother knew his whereabouts to pass that information on to Adoptive Parents' attorney. Without any evidence that Mother knew Putative Father's location when the prospect of adoption arose in 2022 or that Mother gave that information to the attorney for Adoptive Parents, Putative Father's assertion that the attorney arranging the adoption knew or should have known his address is merely speculation. The adoption petition filed by Adoptive Parents indicates Putative Father's "place of residence is unknown[.]" *In Re the Adoption of M.D.*, No. 29D05-2207-AD-1039 (Hamilton Superior Court filed July 19, 2022) (Pet. for Adopt. at 2). "[B]oth the name and address [of the putative father] have to be revealed to fall outside the application of the putative father registry[.]" *In re Paternity of G.W.*, 983 N.E.2d 1193, 1197 (Ind. Ct. App. 2013), *reh'g denied*. Accordingly, Putative Father was not exempted from the requirement of the Registry. *See id.* (holding father was not exempted from the registry when mother revealed only name to adoption attorney).

and the child's mother." Ind. Code § 31-19-5-12(a)(2). DCS filed a petition to terminate Mother's parental rights to Child on March 31, 2022, and Adoptive Parents filed a petition to adopt Child on July 19, 2022. As of August 19, 2022, Putative Father had not registered with the Registry. (Appellant's App. Vol. 2 at 11) (affidavit from Indiana Department of Health). As Putative Father did not register before DCS filed a petition to terminate Mother's rights, he missed his window of opportunity for registering with the Registry.

[21] Because both elements of Indiana Code section 31-19-9-8(a)(6) were met, the trial court did not err when it determined Putative Father's consent was not required before Child's adoption. *See*, *e.g.*, *K.H. v. M.M.*, 151 N.E.3d 1259, 1267 (Ind. Ct. App. 2020) (putative father's consent not required when he did not establish paternity as required by Indiana Code section 31-19-9-8(a)(3)), *trans. denied*.

## 3. Whether Putative Father's consent was irrevocably implied

[22] Putative Father also argues the trial court erred when it determined his consent to Child's adoption was "irrevocably implied" pursuant to Indiana Code section 31-19-5-18. (Appellant's App. Vol. 2 at 14 (Dec. 18, 2023 Order), 23 (Decree of Adoption).) That statute provides:

> A putative father who fails to register within the period specified by section 12 of this chapter waives notice of an adoption proceeding. The putative father's waiver under this section constitutes an irrevocably implied consent to the child's adoption.

Ind. Code § 31-19-5-18. We held in the prior section of this opinion that Putative Father was required to register with the Registry. In addition, we determined his failure to register with the Registry exceeded the time within which he needed to register pursuant to section 31-19-5-12. Thus, the plain language of the Section 31-19-5-18 renders Putative Father's consent to Child's adoption irrevocably implied. *See, e.g.*, *In re Adoption of K.G.B.*, 18 N.E.3d 292, 299 (Ind. Ct. App. 2014) (holding father who "failed to timely register with the Registry . . . impliedly consented to the adoption of the Child").

## Conclusion

[23]　The Adoption Court did not err when it determined Putative Father's consent was not required pursuant to Indiana Code section 31-19-9-8(a)(6). Nor did it err when it concluded that Putative Father's consent to Child's adoption was irrevocably implied under Indiana Code section 31-19-5-18. Accordingly, we affirm the trial court's judgment.

[24]　Affirmed.

Weissmann, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Steven W. Kincaid
Noblesville, Indiana


ATTORNEY FOR APPELLEES

Paul R. Sadler
Emswiller, Williams, Noland, & Clarke, LLC
Indianapolis, Indiana